### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA DIXON, | ) | |
| | ) | |
| Petitioner, | ) | No. 10 C 06727 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MARCUS HARDY, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Petitioner Joshua Dixon has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] In his petition, he presents four claims: (1) the State abused the grand jury process, and therefore violated his Fourteenth Amendment right to due process, by presenting witnesses to the grand jury in order to obtain sworn admissible statements to use at trial in the event that those witnesses later recanted; (2) the State's introduction of evidence of gang intimidation to explain several witnesses' recantations at trial so infected the proceedings as to render them unfair, in violation of his right to due drocess; (3) the prosecutor's reference to Dixon's gang membership to explain the witness recantations in his closing argument similarly rendered the proceedings unfair in violation of Dixon's right to due process; (4) even if none of these errors, individually, violated Dixon's constitutional rights, the cumulative effect of all of the errors deprived him of his right to a fair trial under the Due Process Clause of

---

[1]Jurisdiction is proper under 28 U.S.C. § 2241. Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

the Fourteenth Amendment. R. 1, Habeas Pet. For the reasons that follow, Dixon's

petition is denied.

## I. Background

The tragic facts of this case are set forth in the state appellate court opinion, and

are excerpted below:

> On July 16, 2003, at approximately 2 a.m., the victim, Nikolay
> Shedko, was driving a tractor trailer truck that was too tall to fit under
> a viaduct near the Rockwell Gardens Housing Project in Chicago. A group
> of 20 to 30 adults and teenagers from the project surrounded the truck.
> The crowd included defendant who was 15 years old at the time,
> codefendant Davis, and prosecution witnesses Anthony Hines, Jerome
> West, Ernest Catchings and Jason Munson. When the crowd opened the
> back of the truck and found nothing of value, defendant went to the front
> of the truck and climbed up the driver's side. The truck driver hit
> defendant in the face with a cellular telephone, knocking defendant down.
> After the crowd laughed, defendant asked codefendant Davis for a gun
> and defendant fired into the cab of the truck, killing the driver.

*People v. Dixon*, 882 N.E.2d 668, 670 (Ill. App. Ct. 2007). Several witnesses, including

Anthony Hines, Jerome West, Ernest Catchings, and Jason Munson, testified to those

facts in the grand jury. *Id.* Before Dixon was indicted, however, these witnesses began

to retreat from their previous statements, expressing fear of the Traveling Vice Lords,

a gang with which Dixon was associated: for example, Hines claimed to have been both

threatened and "jumped" by Dixon's associates; West noted that because he worked

security for the Traveling Vice Lords, talking to a prosecutor would put him in danger;

and Catchings said he was fearful of testifying against the defendants because he was

fearful "that he was 'going to get hurt'" at 677. As Dixon claims, fearingthat its key

witnesses would fully recant at trial, the State called these witnesses to submit sworn

2

testimony in front of the grand jury. *Id.* at 678. Dixon emphasizes that although the State had a reason to call those witnesses to the grand jury other than purely seeking an indictment, Habeas Pet. at 11 (citing to "R. TB" 212, 214, 233, and 298 for support), these witnesses were all questioned in the grand jury *before* Dixon was indicted, *id.* at 12.

The State called Hines, West, Catchings, and Munson at trial. *Dixon*, 882 N.E.2d at 670-76. Of these four witnesses, only Hines did not recant any of his previous statements. *Id.* at 670. The prosecution used the grand jury testimony and previous statements made by West, Catchings, and Munson to impeach them at trial. *Id.* at 671-76. Then, during closing arguments, the prosecution referred to the gang involvement in the case to explain the various witnesses' recantations. *Id.* at 678, 682. Dixon was convicted of the charged offenses by the jury and sentenced to 65 years' imprisonment. *Id.* at 678.

Dixon appealed his conviction to the state appellate court, arguing that the prosecution abused the grand jury process by using it to obtain testimony of witnesses it expected might recant at trial; that the trial court improperly allowed testimony involving fear of gang reprisals; and that the prosecution improperly remarked on Dixon's gang membership in closing argument. *Id.*; R. 21,Answer, Ex. A, Def.-Appellant's Br.; R. 21, Ex. C, Def.-Appellant's Reply Br. Dixon conceded in his state appeal that he had not included the grand jury or closing arguments issues in his post-trial motion, *Dixon*, 882 N.E.2d at 678, and that he had failed to object to the prosecutor's closing argument at trial, *id.* at 682. Having found that these arguments

3

had not been "preserve[d] . . . for review," the state appellate court reviewed these claims for plain error, finding both that no error occurred and that no prejudice would have resulted. *Id*. at 678-83. The appeals court, moreover, held that the trial court did not abuse its discretion in permitting the prosecutor to introduce evidence that the witnesses feared that the gang would retaliate in response to those witnesses' testimony at trial. *Id*. at 681. So Dixon's convictions were affirmed.

Dixon then filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, raising two issues: (1) whether the prosecution misused the grand jury; and (2) whether the admission of gang evidence violated his rights. R. 21, Ex. E, PLA. Dixon's PLA was, however, summarily denied by the Illinois Supreme Court. R. 21, Ex. F.[2] Dixon now seeks a writ of habeas corpus in this Court, and, for the reasons set forth in this opinion, the Court denies Dixon's Petition for Writ of Habeas Corpus.

## II. Legal Standards

Dixon's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, a federal district court may issue a writ of habeas corpus when a prisoner is in state custody pursuant to a state court judgment obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

---

[2]Dixon has also filed a post-conviction petition in state court raising additional claims. Habeas Pet. at 8-9. Dixon removed those claims from his federal habeas petition and requested to proceed only on his exhausted claims. R. 12, Mot. Reinstate Habeas Corpus Pet. ¶ 9. The Court therefore only considers Dixon's exhausted claims.

2254(a). "The relevant decision for purposes of our assessment under AEDPA is the decision of the last state court to rule on the merits of the petitioner's claim." *Eichwedel v. Chandler*, 696 F.3d 660, 671 (7th Cir.2012) (internal quotation marks and citation omitted); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991). Moreover, the Court may only review a state prisoner's habeas claims after he has exhausted his state remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). Therefore, the reviewing federal court must determine whether the petitioner "either failed to exhaust all available state remedies or raise all claims before the state courts" before it may reach the merits of an issue. *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001); *see also Lieberman v. Thomas*, 505 F.3d 665, 669-70 (7th Cir. 2007). This requires "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (noting that petitioner must raise his claims "*at each and every level in the state court system*, including levels at which review is discretionary rather than mandatory," to exhaust those claims (emphasis added)); *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010).

The scope of federal review of a habeas petition under § 2254 is narrow, *United States* ex rel. *Guirsch v. Battaglia*, 2007 WL 4557819, at *4 (N.D. Ill. Dec. 20, 2007), and the burden of proof falls on the petitioner to show that he is entitled to relief, *Cullen v. Pinholster*, —— U.S. ——, 131 S. Ct. 1388, 1398 (2011). A federal court may not grant habeas corpus relief unless the state court decision (1) was contrary to, or

5

involved an unreasonable application of clearly-established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court decision is contrary to clearly-established federal law when the court applies a rule that contradicts the governing law set forth by the Supreme Court or, on facts materially indistinguishable from the facts of an applicable Supreme Court precedent, reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court decision unreasonably applies clearly-established law when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *United States* ex rel. *Hampton v. Leibach*, 347 F.3d 219, 245 (7th Cir. 2003) (internal quotation marks and citation omitted). "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *accord Williams*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (internal quotation marks and citation omitted).

In certain circumstances, however, a reviewing federal court should not even reach the question: when a petitioner fails to properly raise issues before the trial court or the state appellate court, he forfeits his ability to raise these issues in his post-

6

conviction appeal—including, pertinently, in his habeas petition. *See Miranda v. Leibach*, 394 F.3d 984, 994-95 (7th Cir. 2005); *see also United States* ex rel. *Monroe v. Zimmerman*, 2010 WL 3307081, at *7 (N.D. Ill. Aug. 18, 2010) (noting that "the forfeiture rule is well-established in Illinois"). This is because a state court's forfeiture holding constitutes a ground that "is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see Miranda*, 394 F.3d at 994-95; *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997). Only where a petitioner can show either "cause for his state-court default of *any* federal claim, and prejudice therefrom" or "a sufficient probability that [the court's] failure to review his federal claim will result in a fundamental miscarriage of justice" should a federal court review a procedurally-defaulted claim. *Edwards v. Carpenter*, 529 U.S. 446, 447, 451 (2000). "Cause" cannot be attributable to the petitioner as it must be external, beyond his control. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" must be more than the mere possibility of prejudice—only "actual prejudice" will suffice." *Id.* at 494. And, to show that a fundamental miscarriage of justice has occurred, the petitioner must demonstrate that he is "actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To avoid forfeiture in Illinois, a defendant must both contemporaneously object at trial and include the alleged error in a written post-trial motion. *People v. Ramos*, 742 N.E.2d 763, 769 (Ill. App. Ct. 2000); *Miranda*, 394 F.3d at 995 (noting that "[w]e believe that the rule requiring that all issues for appeal be preserved in a written post-trial motion is solidly established in Illinois law. . . . [T]he Illinois Supreme Court

7

has repeatedly held that issues not contained in a written post-trial motion are waived on appeal even though a timely objection was interposed at trial." (internal quotation marks and citations omitted)). Thus, a defendant who fails to raise an issue *both* at trial and in a post-trial motion has forfeited that issue, and cannot raise it in his habeas petition. *See People v. Nieves*, 739 N.E.2d 1277, 1282- (Ill. 2000); *Miranda*, 394 F.3d at 994-95.

### III. Analysis

**A.    Procedural Default of the Grand Jury and Closing Arguments Claims by Failing to Raise Them in a Post-Trial Motion**

Dixon acknowledged that he failed to raise Claims One and Three in any of his post-trial motions, respectively, improper use of the grand jury and the closing argument's reference to gangs. *Dixon*, 882 N.E.2d at 678. As a consequence, the state appeals court held that he had forfeited these issues, noting that "a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve an alleged error for review. . . . [T]he defendant failed to raise these claims in a posttrial motion." *Id.* (internal quotation marks and citations omitted). The court then went on to review Dixon's claim for plain error. *Id.*

Claims One and Three were procedurally defaulted, and the state appellate court's review for plain error did not undermine the reliance on default. As the Seventh Circuit held in *Miranda*, "an Illinois court does not reach the merits of a claim simply by reviewing it for plain error" and, therefore, any "plain-error analysis engaged in by the [state] appellate court d[oes] not cure [the petitioner's] default." *Miranda*, 394 F.3d

at 992. So, despite plain-error review, the state court's determination that Dixon had forfeited these issues is both independent, *Coleman*, 501 U.S. at 729, and adequate, *Miranda*, 394 F.3d at 994-95 (noting that the forfeiture rule is solidly established in Illinois); *see also Monroe*, 2010 WL 3307081, at *7. Federal review of these claims is therefore barred by procedural default. *Miranda*, 394 F.3d at 997 (upholding, in a habeas petition, a district court's procedural default ruling on the grounds that the Illinois court's forfeiture holding was an adequate and independent ground).

There are ways to show cause (that is, a good reason) for a procedural default and prejudice (that is, a potential change in outcome) in order to avoid a default and require a federal habeas court to review the claims on their merits. *Miranda*, 394 F.3d at 992. But Dixon has asserted no cause for his failure to raise these issues at the required time, nor shown that prejudice will result. *Carrier*, 477 U.S. at 488. Nor has Dixon demonstrated that he is "actually innocent of the crime" and therefore that the Court's refusal to consider his defaulted claims would result in a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 324; *Miranda*, 394 F.3d at 992.

## B. Failure to Exhaust Cumulative-Error Claim in Petition for Leave to Appeal

Dixon also failed to present, at the required time, his cumulative-error claim to the state court. Dixon's PLA before the Illinois Supreme Court raised only two issues: whether the admission of gang evidence violated his rights, and whether the prosecution misused the grand jury. PLA at 1-2. Specifically, Dixon requested in his PLA

that this Honorable Court grant leave to appeal because: a) the Appellate Court, First District, not only in this case, but in numerous other cases, neither followed, nor addressed, this Court's well-settled decisions on admission of gang evidence to establish motive and b) the Appellate Court violated the defendant's due process right to a full and fair appeal by knowingly misstating the legal basis for the defendant's Grand Jury issue and then deciding the case based on the misstated issue.

*Id.*. This excerpt from the PLA does not mention any cumulative-error claim, and for that matter, neither did the rest of the PLA. Because Dixon did not raise his cumulative error claim before the Illinois Supreme Court, he has not raised it "at each and every level in the state court system" as is required to exhaust that claim. *Lewis*, 390 F.3d at 1025; *see O'Sullivan* 526 U.S. at 839-40, 845-46 (1999) (holding that a prisoner who failed to present claims in his PLA to the Illinois Supreme Court did not exhaust those claims); *Brown*, 599 F.3d at 609.[3]

---

[3] The Seventh Circuit does not appear to have ruled on whether a cumulative-error claim must be itself presented to state courts as a stand-alone claim in order to be properly exhausted, or instead that it is enough to just exhaust each constituent claim. The weight of the Circuit precedent, however, runs strongly in favor of requiring cumulative error to be specifically raised in state court in order to be exhausted. *See, e.g., Knight v. Spencer*, 447 F.3d 6, 18 (1st Cir 2006) (holding that a cumulative-error claim that was not made in state court was not exhausted under § 2254(b)(1)(A)); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (holding that a petitioner must "fairly present his cumulative-error claim to the state courts" to exhaust that claim); *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) (declining to consider petitioner's "claim of cumulative error . . .[b]ecause he [raised it] for the first time on appeal"); *Abdur'Rahman v. Colson*, 649 F.3d 468, 472-73 (6th Cir. 2011) ("Because Abdur'Rahman raised these cumulative error arguments for the first time on habeas review, we may not consider them here."); *Wooten v. Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008) (holding that "a cumulative error claim must be clearly identified in a petitioner's brief before a state court to be exhausted"); *cf. Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) (holding that "Petitioner exhausted [his cumulative error] claim by asserting cumulative error on *both* direct appeal *and* post-conviction" (emphasis added)). *But see Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992) (en banc) (permitting a habeas petitioner to raise a cumulative-error argument that he had not specifically made before the state court).

As with his forfeited claims, Dixon has not shown that the Court should apply an equitable exception to the exhaustion requirement, and therefore this Court declines to do so. There is no apparent cause for Dixon's failure to raise his cumulative-error claim in his PLA—the PLA even recognizes that this was a claim raised in the lower court, and yet does not raise it on appeal. PLA at 3; *see Carrier*, 477 U.S. at 488. Nor has Dixon shown that prejudice will result. *Id*. Moreover, because Dixon has not demonstrated that he is "actually innocent of the crime," no fundamental miscarriage of justice will result from the Court's refusal to consider Dixon's unexhausted claims. *Schlup*, 513 U.S. at 324 ; *Miranda*, 394 F.3d at 992. Therefore, the Court declines to apply an equitable exception to the exhaustion requirement.

## C.    Review on the Merits

Even had Dixon properly preserved his claims (and with respect to those claims neither were defaulted nor unexhausted), the Court must still deny his habeas petition: Dixon cannot show that the state court's reasoning was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

### 1.    The State Appellate Court Correctly Held that the Prosecutor Did Not Misuse the Grand Jury

To succeed on federal habeas review, Dixon must do more than show that the state court reached an incorrect result. He must show that the state court's decision

11

is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). But Dixon has not even shown the state court to have erred on the merits of any of his claims, let alone met the higher burden of proof for habeas review.

Turning to the first claim, Dixon objects to the prosecutor's use of the grand jury to obtain sworn witness testimony from witnesses it feared may later recant. Habeas Pet. at 10-14.[4] Because, Dixon argues, "the witnesses were being presented to the grand jury . . . for the purpose of creating a paper trail if a witness changed their [sic] testimony at trial," and not to fulfill the "legitimate . . . investigative role" of the grand jury, Dixon was "denied. . . his Constitutional Right to Due Process of The Law." *Id.* at 10, 13, 14. To the contrary, obtaining sworn testimony from eyewitnesses to a crime—the purportedly improper pursuit of this grand jury—is, at its core, an investigative task. In fact, the investigatory need of obtaining sworn testimony is at its greatest when the witnesses in question are in danger of recanting for fear of their safety. In this context, the investigation fits comfortably within the broad investigative authority of grand juries, *United States v. R. Enterp., Inc.*, 498 U.S. 292, 297 (1991) ("The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that

---

[4]When Dixon made this argument in state court, the argument appeared to rely, in large part, on the Illinois state constitution. *See* Def.-Appellant's Br. at 20-21. To the extent Dixon's argument here in federal court is based on this state constitutional issue, it is not subject to federal review. *Estelle v. McGuire*, 502 U.S. 62, 67, 72 (1991); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990).

none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush."), and the government properly used the grand jury to record eyewitness testimony.

So there was no error. And even if the state court should have accepted Dixon's argument, Dixon has not cited, and this Court has not found, any Supreme Court decision (or combination of decisions) that clearly establishes that the Due Process Clause prevents the prosecution from using the grand jury in this manner. Without that precedent, the state court's determination here cannot be contrary to, or an unreasonable application, of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

> **2.    The State Appellate Court Correctly Held that the Trial Court Properly Allowed Evidence of Gang Member Retaliation**

Dixon also cannot show that the trial court improperly allowed evidence of the witnesses' fear of gang member retaliation, let alone that the state appellate court's affirmation of this decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Dixon argues that the prosecution prejudiced the proceedings by introducing gang affiliation evidence during trial, and again during closing arguments, to explain the various witnesses' recantations. Habeas Pet. at 17-22. This evidence, Dixon asserts, "served to invite the jury to fall prey to the wide spread [sic] fear of gangs by cloaking, not only Josh Dixon, with [t]he coat of being a gang member, but many times arguing, contrary to the evidence, the crime itself was cloaked in gang involvement." *Id.* at 18.

But the evidence of the gang involvement was probative—that is, relevant—to explain why so many witnesses recanted from their previous testimony at trial. *See* Ill. R. Evid. 401; Fed. R. Evid. 401. To be sure, there is some danger that defendant's gang affiliation could prejudice him in the jury's eyes, but the trial court could easily conclude that the evidence is not so prejudicial as to substantially outweigh its probative value in explaining a key disputed fact—the various witness recantations. *See* Ill. R. Evid. 403; Fed. R. Evid. 403. The probative value of gang evidence to "explain[] a witness's motive to lie about the [Petitioner]'s involvement in the offense" is significant. *Dixon*, 882 N.E.2d at 681; *United States v. Abel*, 469 U.S. 45, 49 (1984) (holding that gang evidence can be admissible when it is relevant).

In any event, once again, the Court can only grant Dixon's habeas petition on this issue if the admission of gang evidence during trial and closing arguments so infected the proceedings as to render Dixon's trial unfair, and only if the state appellate court's conclusion to the contrary was not just incorrect, but so wrong as to be unreasonable. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Allowing the gang-related testimony and argument here does not come close to being unreasonable. *See Briceno v. Scribner*, 555 F.3d 1069, 1077-78 (9th Cir. 2009).

### 3. The State Appellate Court Correctly Held that There Was No Cumulative Error

Finally, Dixon cannot show that the cumulative effect of these alleged errors deprived him of his right to due process. Dixon argues that, even if any one error is individually insufficient to violate his constitutional rights, the combined effect of

multiple errors can result in a violation. As previously discussed, however, the Court concludes that *no* error occurred during Dixon's proceedings, let alone two or more errors. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (noting that "at least two errors [must be] committed in the course of the trial" to sustain a cumulative error claim). Where no errors exist, the cumulative effect of those (non)errors cannot support a successful cumulative-error due process claim: zero plus zero still equals zero.

It is worth noting that the State argues that the cumulative-error rule is not clearly established by the Supreme Court, and therefore the state appellate court's determination cannot be contrary to clearly established Supreme Court precedent. R. 20, Answer at 26. As the State points out, the Seventh Circuit has assumed, without deciding, that a cumulative-error theory can justify federal habeas relief. *Alvarez v. Boyd*, 225 F.3d 820, 824-25 & n.1 (7th Cir. 2000). It is true that the circuit court's opinion is not sufficient, by itself, to clearly establish the rule for habeas purposes. Indeed, several other circuits have held outright that claims of cumulative error are *not* cognizable in federal habeas proceedings. *See, e.g.*, *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation."); *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998).

But it does appear that the Supreme Court has clearly established that the cumulative effect of errors *can* violate due process. In *Taylor v. Kentucky*, the Supreme Court described, as its "conclusion[,] that the cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of

15

fundamental fairness." 436 U.S. 478, 487 n.15 (1978). It is true that *Taylor* involved errors relating to the prosecution's burden of proof, whereas Dixon's case involves the introduction of allegedly inflammatory evidence. But that does not necessarily make the *Taylor* rule inapplicable or unclear in this context. As the Supreme Court in *Yarborough v. Alvarado* noted, "the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." 541 U.S. 652, 666 (2004). This is a likely example: trial errors can reinforce one another so that their combined effect amount to a due-process violation, even if standing alone the error would not violate due process. In any event, the Court need not definitively answer this question because no errors occurred at all.

## D.    Dixon Is Not Entitled to a Certificate of Appealability

When the district court "enters a final order" adverse to a habeas petitioner, it "must issue or deny a certificate of appealability." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner must make "a substantial showing of the denial of a constitutional right" to obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). This requires "the petitioner [to] demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When, however, the district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability may only issue when the "prisoner shows, at least, that jurists of reason would find it

16

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

On Dixon's defaulted claims, Dixon has not shown that jurists of reason would find it debatable as to whether he states a valid claim of a denial of a constitutional right, nor would jurists of reason find it debatable whether the Court was correct in its procedural ruling. *See id.* So no certificate of appealability will issue for Dixon's defaulted claims on the issue of whether default prevents review. Likewise, to the extent that Dixon's claims were decided on the merits, similarly, the Court holds that Dixon has not made "a substantial showing of the denial of a constitutional right," and that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Thus, the Court declines to issue a certificate of appealability for any of Dixon's claims.

## IV. Conclusion

In conclusion, the Court denies Dixon's petition for writ of habeas corpus and denies a certificate of appealability.

ENTERED:


___s/Edmond E. Chang___
Honorable Edmond E. Chang
United States District Judge


DATE: October 4, 2013

17